Filed 4/13/23  P. v. Guevara CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079711 |
| v. | (Super.Ct.No. RIF119968) |
| GUSTAVO ALONSO GUEVARA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, and Arlene A. Sevidal, Lynne McGinnis, and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Petitioner Gustavo Alonso Guevara participated in a gang-related drive-by shooting. He was in one of two vehicles that drove by the home of a rival gang member; shots were fired from one or both vehicles. The evidence was in conflict as to whether petitioner was one of the shooters and even as to whether any shots were fired from the vehicle that he was in. As a result of this incident, he was convicted of attempted murder and other crimes.

This appeal concerns his petition to vacate his attempted murder conviction under Penal Code section 1172.6.[1] The trial court denied the petition on the ground that petitioner was not convicted under the natural and probable consequences doctrine.

We will reverse. The trial court did instruct that petitioner could be convicted of attempted murder if (1) he conspired to commit an assault with a firearm and (2) a co-conspirator committed attempted murder. Although the instruction was erroneous and incomplete, it was, in effect, an instruction on the natural and probable consequences doctrine.

---

[1] All further statutory citations are to the Penal Code, unless otherwise specified.

The petition was actually filed under former section 1170.95. (Stats. 2018, ch. 1015, § 4, amended by Stats. 2021, ch. 551, § 2.) Effective June 30, 2022, however, former section 1170.95 was renumbered as section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will use section 1172.6, somewhat anachronistically, to refer to whichever one of the two statutes was in effect at the relevant time.

# I

## STATEMENT OF FACTS

The following facts are taken from our opinion in petitioner's direct appeal. (*People v. Martinez* (2008, E040764) [nonpub. opn.].)[2]

Three people in a white car drove past the home of a member of the Westside Riva gang. The person in the passenger seat yelled, "Dogs Town" — the name of a rival gang. According to one eyewitness, the person in the passenger seat also fired at least one shot toward the house.

At the same time, an SUV coming from a different direction also drove past the house. Someone in it also said, "Dogs Town," and someone in it also fired shots.

After the police arrived, the white car drove by the house again; the police stopped it. Three members of Dogs Town were in it, including petitioner, who was in the passenger seat. Inside the white car, the police found a stolen, partially loaded nine-millimeter handgun in a hidden compartment behind the glove box.

The back seat passenger — a minor — admitted that his group had driven past the house and that petitioner had been in the passenger seat at the time. However, he denied that anyone in his group fired any shots. He claimed the gun found was his. He also

---

[2]  Section 1172.6 allows the trial court to consider a prior appellate opinion as evidence of the procedural history of the case, but not as evidence of the facts in the case. (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292.) Nevertheless, petitioner's own statement of facts is expressly based on our prior opinion. We deem this a forfeiture of any objection to our considering facts stated in the prior opinion.

claimed that, after the police stopped the car, he reached over the front seat and hid the gun. The police, however, denied seeing him do this.

At the scene, the police found .25-caliber casings but no nine-millimeter casings. Small amounts of gunshot residue were found on petitioner's jacket and on the minor's sweatshirt.

II

STATEMENT OF THE CASE

In 2005, a jury found petitioner guilty of willful, deliberate, and premeditated attempted murder (§§ 187, subd. (a), 664, subd. (a)), with a firearm enhancement (§ 12022.53, subds. (c), (e)) and a gang enhancement (§ 186.22, subd. (a)), and of assault with a firearm (§ 245, subd. (a)(2)), along with other crimes.

The jury was instructed on three theories of attempted murder.

First, it was instructed on an express malice theory. (CALJIC No. 8.66.) Specifically, it was instructed that attempted murder required that "[t]he person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." (*Ibid*.) It was also instructed that, if it found petitioner guilty of attempted murder, it also had to find whether the attempted murder was willful, deliberate, and premeditated. (CALJIC No. 8.67.)

Second, it was instructed on an aiding and abetting theory. (CALJIC Nos. 3.00, 3.01.) Specifically, it was instructed that:

4

"A person aids and abets the commission or attempted commission of a crime when he or she:

"1)  With knowledge of the unlawful purpose of the perpetrator, and

"2)  With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and

"3)  By act or advice aids, promotes, encourages or instigates the commission of the crime."  (CALJIC No. 3.01, brackets omitted.)

Third, it was instructed on a conspiracy theory.  (CALJIC Nos. 6.10.5, 6.11, 6.12, 6.14.)  Specifically, it was instructed, "A conspiracy is an agreement between two or more persons with the specific intent to agree to commit the crimes of murder and assault with a firearm, and with the further specific intent to commit that crime, followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement."  (CALJIC No. 6.10.5.)  "Each member of a criminal conspiracy is liable for each act . . . of every other member of the conspiracy if that act . . . is in furtherance of the object of the conspiracy.  [¶]  The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators."  (CALJIC No. 6.11 [only first two paragraphs given].)

The jury was *not* given an instruction — either in connection with aiding and abetting or in connection with conspiracy — specifically designed to convey the natural and probable consequences doctrine.  (See CALJIC Nos. 3.02, 6.11 [last three paragraphs not given].)

5

Petitioner was sentenced to (as subsequently amended) 23 years 4 months to life in prison.

In 2022, he filed a petition to vacate the attempted murder conviction under section 1172.6. The trial court appointed counsel and set a prima facie hearing. The prosecution filed an opposition, arguing that petitioner was not eligible for relief because the jury had not been instructed on the natural and probable consequences doctrine.

At the prosecution's request, the trial court took judicial notice of the jury instructions that had been given at trial. Defense counsel argued that the conspiracy instructions allowed the jury to find petitioner guilty of attempted murder as long as he conspired to commit an assault with a firearm, even if he did not intend to kill. The trial court, however, agreed with the prosecution that petitioner was not eligible for relief because the jury had not been instructed on the natural and probable consequences doctrine. It therefore denied the petition.

### III

### THE CONSPIRACY INSTRUCTIONS

Petitioner contends that the trial court erred by finding him categorically ineligible for relief.

A.    *Legal Background.*

Ordinarily, attempted murder requires the specific intent to kill. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) However, in 2005, when petitioner was convicted, there was an exception — the natural and probable consequences doctrine.

6

This doctrine applied to a person who either aided and abetted a lesser crime or conspired to commit a lesser crime. If it was reasonably foreseeable that, as a result of the commission of the lesser ("target") crime, the perpetrator would commit attempted murder, and if the perpetrator did commit attempted murder, then the aider and abettor/conspirator would also be guilty of attempted murder. This was true even if the aider and abettor/conspirator lacked the intent to kill. (*People v. Prettyman* (1996) 14 Cal.4th 248, 260-263.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), effective January 1, 2019. (Stats. 2018, ch. 1015.) Among other things, SB 1437 amended section 188 so as to abrogate the natural and probable consequences doctrine as applied to murder and attempted murder. (§ 188, subd. (a)(3), Stats. 2018, ch. 1015, § 2; see also *People v. Gentile* (2020) 10 Cal.5th 830, 849-851.) As a result, an aider and abettor cannot be guilty of either murder or attempted murder unless he or she personally acted with malice. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205.)

SB 1437 also enacted section 1172.6. (Stats. 2018, ch. 1015, § 4.) As originally enacted, section 1172.6 provided: "A person convicted of . . . murder under a natural and probable consequences theory may file a petition . . . to have the petitioner's murder conviction vacated," provided the petitioner would not be guilty of murder under current law. (Former § 1170.95, subd. (a), Stats. 2018, ch. 1015, § 4.)

In October 2021, Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775) amended section 1172.6, effective January 1, 2022. (Stats. 2021, ch. 551, § 2.) SB 775 expanded

7

eligibility for relief to persons convicted of *attempted* murder. It also added the following italicized language: "A person convicted of . . . murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*, [or] attempted murder under the natural and probable consequences doctrine, . . . may file a petition . . . to have the petitioner's murder [or] attempted murder . . . conviction vacated . . . ." (§ 1172.6, subds. (a), (a)(1), Stats. 2021, ch. 551, § 2.)

B.      *Procedure Under Section 1172.6.*

If a person files a facially sufficient petition under section 1172.6, the trial court must hold a hearing to determine whether the petition states a prima facie claim for relief. (§ 1172.6, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 957.)

At the prima facie hearing, the trial court can consider the record of conviction. (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 970-972.) "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."' [Citation.]" (*Id*. at p. 971.) However, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id*. at p. 972.)

If the petition does state a prima facie claim, the trial court must hold an evidentiary hearing, at which the prosecution has the burden to prove, beyond a

8

reasonable doubt, that the petitioner is guilty of murder or attempted murder even under SB 1437. (§ 1172.6, subds. (d)(1), (d)(3).)

C.      *Application Here*.

As petitioner acknowledges, section 1172.6, subdivision (a), when read literally, grants potential eligibility to:

(1) "A person convicted of . . . murder under the natural and probable consequences doctrine";

(2) "A person convicted of . . . murder under . . . [an]other theory under which malice is imputed to a person based solely on that person's participation in a crime," and

(3) "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . ."

On that reading, a person convicted of *attempted* murder under a theory of *imputed malice* is not eligible for relief. Petitioner argues, however, that we should overlook the omission of this category as a mere "scrivener's error."

We need not decide this question. We may assume, without deciding, that a person convicted of attempted murder is not eligible for relief unless he or she was convicted under the natural and probable consequences doctrine.

We turn to the two conspiracy instructions.

CALJIC No. 6.11 instructed that "[e]ach member of a criminal conspiracy is liable for each act . . . of every other member of the conspiracy if that act . . . is in furtherance of the object of the conspiracy." The trial court omitted the last three paragraphs of

9

CALJIC No. 6.11, which would have stated the natural and probable consequences doctrine as applied to conspiracy.

The principle that a member of a conspiracy is liable for acts of other members in furtherance of the conspiracy is *not* a separate and distinct theory of imputed malice. Rather, it is part of the natural and probable consequences doctrine. "[A] conspirator may be vicariously liable for a crime committed in furtherance of a conspiracy only if that crime was a natural and probable consequence of the conspiracy." (*People v. Prieto* (2003) 30 Cal.4th 226, 249–250; accord, *People v. Guillen* (2014) 227 Cal.App.4th 934, 999; *People v. Zielesch* (2009) 179 Cal.App.4th 731, 739; *People v. Garewal* (1985) 173 Cal.App.3d 285, 302; see also *People v. Kauffman* (1907) 152 Cal. 331, 334.)

In retrospect, then, there was a problem with CALJIC No. 6.11, as given. It stated that each member of a conspiracy was liable for each act of every other member in furtherance of the object of the conspiracy, without regard to whether that act was either (1) the intended crime or (2) a natural and probable consequence of the intended crime. However, even though it was erroneous and incomplete, and even though it did not use the words "natural and probable consequences," it was, in effect, an instruction on the natural and probable consequences doctrine.

Meanwhile, CALJIC No. 6.10.5 defined "[a] conspiracy" as requiring "an agreement between two or more persons with the specific intent to agree to commit *the crimes of murder and assault with a firearm*, and with the further specific intent to commit *that crime* . . . ."

10

The plural "crimes" and the conjunctive "and" conflicted with the reference later in the same sentence to a singular "that crime." As a result, CALJIC No. 6.10.5 was ambiguous. It could mean that, unless petitioner had the intent to commit *both* murder *and* assault with a firearm, then he was not a member of any conspiracy at all. Alternatively, it could mean that, if petitioner had the intent to commit murder, then he could be a member of a conspiracy to commit murder; and if he had the intent to commit assault with a firearm, then he could be a member of a conspiracy to commit assault with a firearm. On the latter reading, the two instructions, taken together, meant that as long as petitioner was a member of a conspiracy to commit assault with a firearm, then he was liable for each act of every other member of the conspiracy that was in furtherance of the commission of assault with a firearm — including murder.

The People argue that it is not reasonably likely that the jury actually adopted the latter reading. "When reviewing ambiguous instructions, we inquire whether the jury was 'reasonably likely' to have construed them in a manner that violates the defendant's rights. [Citation.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 873.) Here, we are not deciding whether the instructions were erroneous; we are deciding whether petitioner made a prima facie case for relief under section 1172.6. However, in this context, too, most courts have applied the "reasonably likely" standard. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 107-109; see also *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1267 ["the jury also could have reasonably construed the instructions in a manner permitting it to convict appellant under a theory of imputed malice"]; but see *People v.*

11

*Langi* (2022) 73 Cal.App.5th 972, 984 [evidentiary hearing is required when the record "does not conclusively negate the possibility" that the jury found petitioner guilty based on imputed malice].)

On its face, the second meaning, requiring *either* intent to commit murder *or* intent to commit an assault with a firearm, seems more probable. After all, petitioner was also charged with assault with a firearm. Regardless of the jury's verdict on the attempted murder count, it still had to decide whether he was guilty of that charge. It was reasonable that, as long as he entered into a conspiracy to commit assault with a firearm, then the jury could find him guilty of assault with a firearm, even if he did not personally fire a shot. Conversely, it would be *unreasonable* to suppose that the jury could not find him guilty of assault with a firearm on a conspiracy theory unless he conspired to commit *both* murder *and* assault with a firearm.

In addition, we "must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) The prosecutor argued, "A conspiracy is an agreement between two or more persons with the specific intent to commit *a crime*, followed by an overt act by one of the parties." (Italics added.) "Let's look at the law of conspiracy. [¶] That is an agreement by two or more persons to do something illegal." "[The judge is] going to tell you that conspiracy [is] two or more people with the specific intent to commit *a crime* when an overt act is taken. . . . He's going to tell you also that each member of a conspiracy is guilty." (Italics added.) "Even if you don't believe that shots were fired from the white car,

12

[petitioner is] still guilty if you believe that there was an agreement to do the illegal act — that is, *the shooting*." (Italics added.)

This argument indicated that a conspiracy merely required an agreement to commit a crime — not necessarily murder. Indeed, the prosecutor specifically argued that petitioner was guilty of murder even if he agreed only to a shooting.

Admittedly, the prosecutor also argued that petitioner was guilty of attempted murder either because he was the shooter, or because he aided and abetted and/or conspired in an intended murder. As to whether the shooter intended to kill, he argued: "When you fire shots at a person, you're trying to kill them. I don't think anyone disputes that fact, especially when gang members yelled out and several shots are fired where people have to run into the house. You're trying to kill somebody." However, he presented these as alternative theories; they did not rule out a theory of conspiracy to commit a shooting.[3]

In light of the prosecutor's arguments, it is reasonably likely that the jury understood that they could convict petitioner of attempted murder as long as he conspired to commit a shooting and the shooter intended to kill.

---

[3] As petitioner notes, the jury sent out a question asking, "If we found SUV and white car are connected together in this crime, are we to treat actions of both vehicles equal?" The trial court responded by referring the jurors back to the aiding and abetting and conspiracy instructions. This shows that the jurors were at least considering holding petitioner vicariously liable for shots fired from the SUV. However, it is not clear whether, by "this crime," they meant an intended murder or merely an intended shooting.

13

Finally, we recognize that the jury found that the attempted murder was willful, deliberate, and premeditated. However, this does not necessarily mean it found that petitioner had the intent to kill. The instruction on this topic said: "To constitute willful, deliberate, and premeditated attempted murder, *the would-be slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being." (CALJIC No. 8.67, italics added.) Nothing in the instruction required the jury to find that petitioner — rather than the actual shooter — acted with willfulness, deliberation and premeditation.

We therefore conclude that the jury may have convicted petitioner of attempted murder under a natural and probable consequences theory. It follows that the trial court erred by denying the petition without an evidentiary hearing.

IV

DISPOSITION

The order denying the petition is reversed. On remand, the trial court must issue an order to show cause and hold an evidentiary hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>RAMIREZ</u>
P. J.

We concur:

<u>McKINSTER</u>
J.
<u>CODRINGTON</u>
J.

14